# UNITED STATES BANKRUPTCY COURT
## FOR THE
## DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**MARY A. CURRIE**,                                           Chapter 13
    Debtor                                 Case No. 11-17349-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**MARY A. CURRIE**,
    Plaintiff
v.                                                            Adv. P. No. 12-1009
**WELLS FARGO BANK, N.A.,**
    Defendant

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## MEMORANDUM

## I. INTRODUCTION

The matter before the Court is the Motion filed by Defendant, Wells Fargo Bank,

N.A., successor by merger to Wells Fargo Bank Southwest, N.A., f/k/a Wachovia

Mortgage, FSB, f/k/a World Savings Bank, FSB (the "Defendant" or "Wells Fargo"), to

Dismiss the Complaint filed by Mary Ann Currie (the "Plaintiff" or the "Debtor") through

which, among other things, she objects to the Defendant's proof of claim and seeks to avoid

a mortgage held by the Defendant on her residence.   The Debtor filed an Opposition to the

Defendant's Motion to Dismiss, and the Court heard the matter on January 8, 2013.

## II. PROCEDURAL BACKGROUND

The Debtor commenced a Chapter 13 case on August 2, 2011.[1]  It was her second

case as she had filed a prior bankruptcy case in the United States Bankruptcy Court for the

Northern District of California on September 1, 2010.  At the time the Debtor filed her

present Chapter 13 case in the Eastern Division of this court, she was represented by

Attorney Richard I. Isacoff, whose office is located in Pittsfield, Massachusetts.  Although

the Debtor's Chapter 13 petition was electronically signed, Attorney Isacoff filed, on behalf

of the Debtor, a signature page initialed by  Margaret Currie, as attorney in fact for Mary

Ann Currie, and a copy of a "General (Durable) Power of Attorney" signed by the Debtor

on April 26, 2007.[2]

On August 15, 2011, the Debtor filed her Schedules and Statement of Financial

Affairs, as well as a Chapter 13 Plan.  On Schedule A - Real Property, the Debtor listed her

residence, 48 Nponset [sic] Heights Avenue, Foxboro, MA 02035 (the "property"), with a

value of $250,000.  She claimed the property as exempt in an unspecified amount on

Schedule C - Property Claimed as Exempt without indicating whether she was claiming

the federal or state exemptions.  She claimed no other exemptions.  On Schedule D -

Creditors Holding Secured Claims, the Debtor listed "Wachovia" as the holder of a

---

[1] The Court may take judicial notice of the documents in the debtor's file and
those in the Court's own records. *See* In re Lee, 472 B.R. 156, 166 n.7 (Bankr. D. Mass.
2012); In re Hyde, 334 B.R. 506, 508 n.2 (Bankr. D. Mass. 2005). *See also* In re Dessources,
430 B.R. 330, 331 n.5 (Bankr. D. Mass. 2010).

[2] Margaret Currie's address, as set forth in the Power of Attorney, is 11 Hayes
Lane, Petaluma, California.

2

mortgage on the property in the amount of $300,000.  The Debtor listed no other creditors on Schedule D, or any other schedule of liabilities.  On Schedules I and J - Current Income and Expenses of Individual Debtor(s), the Debtor listed total monthly income of $2,069 from three sources:  1) income of $800 from real property; 2) income of $569 from social security; and 3) income of $700 from a "stipend."[3]  On Schedule J, she disclosed total monthly expenses of $705, excluding any monthly mortgage payments.

On August 17, 2011, Attorney Isacoff moved to withdraw as the Debtor's attorney. The Court authorized his withdrawal from the case.  The Debtor's present counsel filed an appearance on September 9, 2011.[4]

The Debtor filed amended schedules of assets and liabilities on October 22, 2011 and an amended Chapter 13 plan.  She amended her schedules again on January 3, 2012.  On March 9, 2012, she filed a Second Amended Chapter 13 plan.

On amended Schedule B and in her Second Amended Chapter 13 Plan, as part of her liquidation analysis, the Debtor listed claims against her daughter, Patricia Eagles, and her granddaughter, Deborah Mahoney, for conversion or theft of various items of personal property, as well as a claim, more fully disclosed in her Amended Statement of Financial Affairs, against Frederick and Derick Elliott, which had been filed in the U.S. District Court for the Southern District of Florida, Case No. 09-CIV-20657, arising out of a questionable

---

[3] In her amended Schedule J, she disclosed that the stipend was from the Commonwealth of Massachusetts for home care.

[4] Margaret Currie filed an Emergency Motion to Extend Stay on August 23, 2011. The Court granted the motion on August 31, 2011.

investment scheme in which the Debtor had invested $385,000 in 2005-2006.  In addition,

the Debtor listed claims against Wells Fargo Southwest as successor in interest to Wachovia

Bank, successor in interest to World Savings Bank FSB, "for unfair and deceptive trade

practices, predatory lending and to void mortgage." She listed those claims as exempt

under the federal exemption scheme on Schedule C.

On her amended Schedule F - Creditors Holding Unsecured Nonpriority Claims, the

Debtor listed three creditors with claims totaling $1,115.44.  None of those creditors filed

a timely proof of claim.

On her amended Schedule C, the Debtor elected the state exemptions and added the

property as exempt pursuant to Mass. Gen. Laws Ch. 188, §1.  No party in interest has

objected to amended exemptions.

The Defendant filed a secured proof of claim in the amount of $315,117.65 on

September 13, 2011 identifying World Savings Bank, FSB as the lender.  The Defendant

included a prepetition arrearage of $55,456.29 in the total amount of the claim.[5]  The

Defendant attached to its proof of claim an adjustable rate mortgage note, dated August

17, 2006, approximately eight months before the Debtor executed the power of attorney in

favor of her daughter Margaret Currie; a mortgage, dated August 17, 2006, which

contained a notary's acknowledgment, dated August 18, 2006, signed by John S. Sweeny;

---

[5] Wells Fargo listed the principal balance of the loan as $252,884.03, although the
original loan amount was $234,000.  In calculating the arrears it listed 12 payment of
$1,379.88 as overdue and 10 payments of $1,460.26 as overdue, although the Debtor's
original payment amount was $862.81.  In addition, it listed an escrow deficit of
$4,421.24 in its arrearage as well as foreclosure costs of $7,802.31.

and a description of the property.

Wells Fargo is the only creditor that has filed a proof of claim.  It objected to the
Debtor's Second Amended Chapter 13 Plan on March 9, 2012 in which the Debtor listed
Wells Fargo's claim as unsecured in the amount of $253,999.44 and proposed to pay Wells
Fargo a seven percent dividend.  Pursuant to a Stipulation filed on May 2, 2012, the parties
agreed to defer consideration of Wells Fargo's the objection until the earlier of thirty days
following final judgment in this adversary proceeding or an agreement among the parties.

### III. THE DEBTOR'S COMPLAINT

On January 18, 2012, the Debtor commenced the above-captioned adversary
proceeding by filing a "Complaint and Objection to Proof of Claim." She attached nine
exhibits to her Complaint, including: 1) the mortgage; 2) a "Summary Screen" relating to
the corporate status of Colonial Title & Escrow, Inc. generated by the Secretary of the
Commonwealth, Corporate Division; 3) a decision issued in the case of <u>Massachusetts
Conveyancers Assoc., Inc. v. Colonial Title & Escrow, Inc.</u>, 13 Mass. L. Rptr. 633 (Mass.
Super. Ct. June 5, 2001); 4)  a copy of Revised Executive Order No. 455 (04-04), issued by
Governor Mitt Romney relating to the Standards of Conduct for Notaries Public; 5) the
proof of claim filed by Wells Fargo; 6) two letters sent by Debtor's counsel to the president
of Wells Fargo, one dated November 26, 2011 and the other dated December 13 , 2011; and
7) a Notice issued by the United States District Court for the Northern District of California
relating to a proposed settlement of a class action against World Savings, Inc., World
Savings Bank, FSB, Wachovia Mortgage, FSB, now know as Wachovia Mortgage, a division

of Wells Fargo Bank, N.A., Wachovia Corporation; Golden West Financial Corporation;

Wachovia Bank, FSB, formerly known as World Savings Bank, FSB-TX; Wachovia

Mortgage Corporation, Wells Fargo Home Mortgage, and Wells Fargo Bank, N.A.

In her Complaint, the Debtor alleged that she is an 86 year old woman who has

resided at the property since at least 2001 and that the property has been in her family for

more than 60 years.   When she was approximately 80 years old, on August 17, 2006, the

Debtor granted a first mortgage on the property to World Savings Bank, FSB to secure an

adjustable rate mortgage note in the original principal amount of $234,000.   Prior to

granting the mortgage, the Debtor alleged that the property was free and clear of any

encumbrances or liens.

According to the Debtor, a representative of World Bank arrived at the property for

the purpose of conducting the loan closing, including the execution of the adjustable rate

mortgage note, the mortgage, and other supporting documents by the Debtor.  The World

Bank representative at the closing introduced himself to the Debtor and the Debtor's

daughter, Margaret Currie, who was also in attendance at the closing, as Attorney David

B. Carroll ("Attorney Carroll").  Attorney Carroll was not personally known to the Debtor

or her daughter, and they did not ask him for identification when he arrived at the

property for the closing.

The Debtor alleged that, after his arrival, Attorney Carroll began directing the

Debtor where to sign and initial the closing documents that he had brought with him and

that, during the closing, Attorney Carroll simply pointed to where the Debtor should sign

6

and date the various documents presented.  The Debtor alleged that he never provided any

explanation of the contents or effects of any documents.  According to the Debtor, she was

not  provided with a single copy of the requisite notice of right of rescission—let alone the

two copies mandated by Mass. Gen. Laws ch. 140D, § 10(a) and 209 C.M.R. § 32.23.

The Debtor's signature on the mortgage was notarized by a notary public, John S.

Sweeny.  In the notarization affixed to the mortgage, he represented that,

> [o]n this *18 day of August, 2006*, before me, the undersigned notary public,
> personally appeared Mary Ann Currie, proved to me through satisfactory
> evidence of identification, which was Driver's License, to be the person
> whose name is signed on the preceding or attached document, and
> acknowledged to me that he/she/they signed it voluntarily for the stated
> purpose.

(emphasis supplied).  Although the notarization provided that the Debtor executed and

acknowledged the mortgage on August 18, 2006, as noted above, the adjustable rate

mortgage note and mortgage are dated August 17, 2006.  In addition, the notary who

allegedly witnessed the Debtor's execution of the mortgage identified himself as John S.

Sweeny, although no one other than the Debtor, her daughter, and the representative of

World Bank claiming to be Attorney Carroll were present at the closing.  Accordingly, the

Debtor alleged:  "[E]ither Mr. Sweeny's notarization is false, or the individual at the

Closing was Mr. Sweeny, not Attorney Carroll."  The Debtor additionally averred the

following:

> 19. In Massachusetts, conveying an interest in real estate is the practice of
> law.  Opinion of Justices, 289 Mass. 607, 613 (1935). Upon information and
> belief, John S. Sweeny has never been admitted to practice law in the
> Commonwealth of Massachusetts.

7

20. According to the Massachusetts Secretary of the Commonwealth Corporations Division website, during 2006 John Sweeny was the President of Colonial Title & Escrow, Inc., a Rhode Island Corporation with a Massachusetts location at 132 Central Street, Foxboro, Massachusetts 02035 ("Colonial Title"). . . .

21. According to Exhibit 2, David B. Carroll was the Registered Agent for Colonial Title & Escrow, Inc. prior to its involuntary revocation on March 31, 2008.

22. By Complaint filed on May 17, 1996, the Massachusetts Coneyancers [sic] Association, Inc. in the Suffolk Superior Court, (Massachusetts Conveyancers Ass'n, et al. v. Colonial Title & Escrow, Inc., 1996-02746) against Colonial Title & Escrow, Inc. alleging, in sum, that it was engaged in the unauthorized practice of law arising out of its real estate transaction practices in violation of M.G.L. c. 221, §§ 46, 46A.

23. According to the Factual Findings of the Honorable Justice Haggerty of the Suffolk Superior Court as stated in Massachusetts Conveyancers Ass'n v. Colonial Title & Esrow, Inc. 13 Mass. L. Rptr. 633 (Suffolk 2001), 2001 WL 669280 (Mass. Super.); (hereinafter the "Suffolk Superior Case"), Colonial Title provided services to mortgage lenders in connection with residential real estate transactions, including refinancing transactions.

24. According to the findings in the Suffolk Superior Case, Mr. Sweeny would occasionally conduct real estate closings.

25. The Superior Court held in the Suffolk Superior Case that Colonial Title was engaged in the unauthorized practice of law pursuant to M.G.L. c. 221, §§ 46, 46A, and entered a final judgment, in pertinent part (hereinafter the "Injunction") as follows:

> The activities of Colonial in its dual roles as title insurance issuing agent and closing agent as detailed above constitute the unlawful practice of law. Colonial is permanently enjoined from performing the following activities…

> 3. [sic] Preparing, drafting or reviewing legal documents that affect title to real estate or affect the obligation of the parties to real estate transactions.

> 4. [sic] Explaining at the closing any documents relating to the interest in the real estate being created, transferred or terminated and relating to the agreement of the parties…
>
> 7. [sic] representing lenders as their closing agents…

Colonial Title at *7-8.

> 26. Upon information and belief, the reconsideration of the Injunction was denied, and no appeal was taken. Therefore, the Injunction as to Colonial Title remains in effect.

(footnotes omitted).  In addition, the Debtor alleged that the adjustable rate mortgage note contained a heading captioned "Pick-A-Payment Loan" and provided for initial monthly payments of $862.61.[6]  A review of the note reveals that the initial interest rate was 7.340% but was scheduled to change in less than two months on October 15, 2006 and could change every month thereafter.  The interest rate was capped at 11.950%.  In sum, the adjustable rate mortgage note provided for negative amortization, deferred interest, and a prepayment penalty.

The Debtor alleged that Attorney Carroll did not disclose the potential for negative amortization of the loan and "never provided any explanation of the content or effect of any such documents" to the Debtor at the closing other than instructing her where to sign and initial the note.   Further, the Debtor alleged that the Defendant did not address her ability to repay the loan or whether it knew or should have known that she would not be

---

[6] The note provided: "The amount will change as described in Sections 3(C) and 3(D) below. My initial monthly payment amount was selected by me from a range of initial payment amounts approved by Lender and may not be sufficient to pay the entire amount of interest accruing on the unpaid Principal balance."

able to repay the loan following the first thirteen months.

Based upon the allegations set forth above, the Debtor formulated five counts as follows: Count I – "Wells Fargo Fails to Demonstrate Its Standing;" Count II – "The Wells Fargo Claim Is Wholly Unsecured as the Mortgage Is Void;" Count III – "Rescission;" Count IV – "M.G.L. c. 93A;" Count V – "Breach of Contract – Pick-A-Payment Settlement." In the Debtor's Opposition to the Defendant's Motion to Dismiss, the Debtor agreed to voluntarily dismiss Counts III and V.[7]

With respect to Count V, the Debtor described the class action filed in the United States District Court for the Northern District of California, namely <u>In re: Wachovia Corp. "Pick-a-Payment" Mortgage Marketing and Sales Practices Litigation</u>, M:09-CV-2015 ( the "Class Action"), attaching, as noted above, a copy of a notice authorized by the district court, advising mortgagors that "[a] Settlement has been reached in a class action involving Pick-a-Payment mortgages. The Settlement resolves litigation over whether the Defendants failed to make complete and accurate disclosures with respect to their Pick-a-Payment mortgage loans."  According to the Debtor, the Class Action Plaintiffs alleged, in sum, that the practices of World Bank, FSB in originating the so called Pick-a-Payment Loans between August 1, 2003 and December 31, 2008 were improper due to a failure to make complete and accurate disclosures relating the terms of the loans.

---

[7] The Debtor's Complaint contained two Counts with Roman Numeral "II," namely Count II -  "The Wells Fargo Claim Is Wholly Unsecured as the Mortgage is Void" and Count II - "Rescission."  For purposes of this decision, the Court shall refer to the later Count II as Count III, and existing Counts III and IV as Count IV and Count V.

The Debtor further averred, upon information and belief, that the United States District Court for the Northern District of California entered a final order with respect to the Settlement, making the terms of the Settlement binding upon the defendants as to all eligible class members that did not otherwise opt-out of the Class Action.  According to the Debtor, borrowers who still had Pick-A-Payment mortgage loans originated from August 1, 2003 through December 31, 2008 secured by their primary residence, and whose mortgage payments were more than 60 days past due as of December 16, 2010 were eligible Class C members.  Those Class C members, in turn, were eligible to participate in the loan modification program outlined in Paragraph 10 of the Settlement Notice. Specifically, the Settlement Notice provided, "[t]he Defendants will offer permanent loan modifications to eligible Settlement Class C Members who live in their homes and who are at least 60 days delinquent on their mortgage payments… The Loan Modification Program will operate through June 30, 2013."  The Debtor alleged that she qualified as a member of Settlement Class C for the purposes of the Settlement and that she did not exercise her right to opt-out of the Settlement.  She, therefore, alleged that she was a beneficiary of the covenants and agreements memorialized in the Settlement.  Finally, the Debtor alleged that "[d]espite numerous telephone conversations and written correspondence with Wells Fargo, she has never been offered a loan modification as required by the Settlement," and, thus, Wells Fargo breached the terms of the Settlement.[8]  **IV. THE DEFENDANT'S**

---

[8] As will be discussed below, Wells Fargo relies upon an order, dated May 17, 2011, of the United States District Court for the Northern District of California and the Agreement and Stipulation of Settlement of Class Action, executed on December 10,

**MOTION TO DISMISS**

The Defendant filed its Motion to Dismiss and Memorandum of Law in Support of Its Motion to Dismiss on September 21, 2012.  It attached seven exhibits to its Memorandum in support of its Motion to Dismiss, including 1) a copy of its proof of claim; 2) a copy of the Debtor's Second Amended Chapter 13 Plan; 3) a copy of a Stipulation and Agreed Order pursuant to which Wells Fargo and the Debtor agreed to defer the hearing on confirmation of the Debtor's Second Amended Plan and Wells Fargo's objection until 30 days following the entry of final judgment in this adversary proceeding; 4) a copy of a document generated by the Federal Deposit Insurance Corporation with the caption, "History of World Savings Bank Fsb, North Las Vegas, Nevada (FDIC Cert: 27076) Note: This Institution is currently part of Wells Fargo Bank, National Association, Sioux Falls, South Dakota;" 5)  a copy of an order, dated May 17, 2011, entered by the United States District Court for the Northern District of California in the Class Action, granting final approval of the Settlement; 6) a copy of a Judgment, dated May 17, 2011, dismissing the Class Action with prejudice; and 7) a copy of the "Agreement and Stipulation of Settlement of Class Action."

The Defendant seeks dismissal of all counts of the Debtor's Complaint.  Because, as noted above, the Debtor agreed to the dismissal of Counts III and V,  only Counts I, II, and IV are pertinent to the Motion.  In seeking dismissal of Count I, the Defendant argues that

---

2010 by the Plaintiffs and Defendants in the Class Action in support of its Motion to Dismiss.  The Court shall reproduce the relevant portions of the Settlement in the Discussion section of this decision.

it does not need to provide an endorsement or assignment with respect to the note or

mortgage because it is the successor in interest by way of merger to World Savings Bank,

FSB and Wachovia Savings Bank, FSB.   In seeking dismissal of Count II, the Defendant

argues that the Debtor does not have standing to assert the claim for the unauthorized

practice of law because, to the extent Mr. Sweeny conducted the closing, he represented

World Savings Bank, not the Debtor.   The Defendant seeks dismissal of Count IV on four

alternate grounds: 1) the Debtor did not comply with the written pre-suit demand

requirement of Chapter 93A § 9; 2) the Debtor's claim is time barred; 3) the Pick-A-Payment

Class Action Settlement, discussed in more detail below, bars the Debtor's Chapter 93A

claim; and 4) the Home Owners' Loan Act ("HOLA"), 12 U.S.C. § 1461, et seq., preempts

the Debtor's Chapter 93A Claim.   If the Court concludes that any one ground is sufficient,

it need not address the others.

## V. STANDARD FOR DISMISSAL

To survive a motion to dismiss, a complaint must contain sufficient facts to "state

a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570

(2007); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).    The factual allegations must be

separated from the conclusory statements in order to analyze whether the former, if taken

as true, set forth a "plausible, not merely a conceivable, case for relief." Juarez v. Select

Portfolio Servs., Inc., No. 11-2431, __ F.3d __, 2013 WL 500868,  at *4 (1st Cir. Feb. 12, 2013)

(citing, inter alia, Ocasio–Hernández v. Fortuño–Burset, 640 F.3d 1, 12 (1st Cir. 2011)).   In

reviewing the Debtor's complaint, the court cannot "'disregard properly pled factual

13

allegations' nor 'attempt to forecast a plaintiff's likelihood of success on the merits.'" Id. (citing Ocasio-Hernández, 640 F.3d at 12–13 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)).

In reviewing the Debtor's Complaint, the Court may consider the attachments to the her Complaint, including the proof of claim filed by the Defendant and the note and mortgage attached to it. Rederford v. U.S. Airways, Inc., 589 F.3d 30, 35 (1st Cir. 2009); Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir. 2008) ("'[w]hen . . . a complaint's factual allegations are expressly linked to-and admittedly dependent upon-a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6).'"); Royal Car Rental, Inc. v. Banco Popular de Puerto Rico, No. 11-1399, 2012 WL 3134289, at *10 (D. P.R. Aug. 1, 2012). See also Brown v. Bank of Am. Corp., No. 10–11085, 2011 WL 1311278 (D. Mass. Mar. 31, 2011) ("When evaluating the merits of a motion to dismiss, a court may look to the facts alleged in the pleadings as well as the documents attached as exhibits or incorporated by reference in the complaint."); In re Lacey, 10-19903-JNF, 2011 WL 3607963, at *4 (Bankr. D. Mass. Aug. 16, 2011).

A motion to dismiss may be converted to a motion for summary judgment if the court chooses to consider materials outside the pleadings in making its ruling. See Fed. R. Civ. P. 12(d); Trans-Spec Trust Serv., Inc., 524 F.3d at 321 (citing Garita Hotel Ltd. P'ship v. Ponce Fed. Bank, F.S.B., 958 F.2d 15, 18 (1st Cir. 1992)). "'It is apodictic that summary judgment should be bestowed only when no genuine issue of material fact exists and the

movant has successfully demonstrated an entitlement to judgment as a matter of law.'" In re Hann, 476 B.R. 344, 354 (B.A.P. 1st Cir. 2012) (quoting Desmond. v. Varrasso (In re Varrasso), 37 F.3d 760, 762 (1st Cir. 1994)).

## VI. DISCUSSION

### A. Count I – Defendant Fails to Demonstrate Standing

Through Count I of the Complaint, the Debtor alleges that the Defendant failed to demonstrate standing to file the proof of claim.  The Defendant filed its proof of claim in accordance with 11 U.S.C. § 501(a)  and Fed. R. Bankr. P. 3001 and, thus, the proof of claim is "prima facie evidence of the validity and amount of the claim."  Fed. R. Bankr. P. 3001(f); see In re Long, 353 B.R. 1, 13 (Bankr. D. Mass. 2006) ("A proof of claim executed and filed in accordance with the Federal Rules of Bankruptcy Procedure constitutes prima facie evidence of the validity and amount of the claim."); see also Juniper Dev. Group v. Kahn (In re Hemingway Transp., Inc.), 993 F.2d 915, 925 (1st Cir. 1993) ("A proof of claim which comports with the requirements of Bankruptcy Rule 3001(f) constitutes prima facie evidence of the validity and amount of the claim.").

The note attached to the Defendant's Proof of Claim designates "World Savings Bank, FSB" as the lender, not the Defendant Wells Fargo, N.A.  Specifically, in Count I, the Debtor contends that the Defendant did not have standing to file the proof of claim because it did not attach an endorsement of the note or an assignment demonstrating that "the rights of World Savings Bank, FSB . . . were transferred to Wachovia [its successor], and in turn to [the Defendant]."   In her Opposition to the Defendant's Motion to Dismiss, the

Debtor also asserts that discovery would be needed to determine whether the Defendant is still the current note holder because the Defendant may have securitized the Defendant's mortgage.

In seeking dismissal of Count I, the Defendant argues that it is both judicially noticeable and a matter of public record that Wells Fargo is the successor in interest to World Savings Bank. It maintains that it is, and always was, the original holder of the 2006 note because World Savings Bank simply changed its name to Wachovia, effective December 31, 2007. Wachovia then changed its name to Wells Fargo Bank Southwest, N.A., which "merged with and into Wells Fargo Bank, N.A.," the Defendant's current name, effective November 1, 2009. The Defendant asserts that it obtained its predecessor's loans by way of succession and cites a number of decisions in support of that proposition. *See, e.g.*, Park v. Wells Fargo Bank, No., C 12-2065-PJH, 2012 WL 3309694, at *2 (N.D. Cal. Aug. 13, 2012) ("Numerous courts have . . . concluded that Wells Fargo is the successor to Wachovia and World Savings."); Nguyen v. Wells Fargo Bank, N.A., 749 F. Supp. 2d 1022, 1035 (N.D. Cal. 2010) ("[T]he original lender, World Savings Bank, FSB, simply changed its name to Wachovia Mortgage, FSB, and is now a division of Wells Fargo Bank, N.A., so transfers among those entities were proper."); DeLeon v. Wells Fargo Bank, N.A., 729 F. Supp. 2d 1119, 1121 (N.D. Cal. 2010) ("World Savings had changed its name to Wachovia Mortgage, FSB and then merged into Wells Fargo Bank, N.A.").

The Court rules that the Debtor failed to plead sufficient facts to support a plausible claim that the Defendant is not the original holder of the note. As a result, the Defendant

16

did not need to supply endorsements or assignments to support the proof of claim because it is the successor in interest to World Savings Bank and Wachovia Mortgage by way of merger pursuant to MLBR Appendix 1, Rule 13-13(a) ("If the claimant is not the original holder of the note and mortgage or security agreement, . . . the creditor shall attach copies of any and all assignments or other appropriate documentation sufficient to trace ownership of the mortgage or security agreement to establish its standing to assert the claim."); <u>Park</u>, 2012 WL 3309694, at *2; *see also* 12 U.S.C. § 215a(e).

Other than speculating in her Opposition to the Motion to Dismiss that the Defendant may have securitized the note by placing it in a trust, the Debtor produced no "substantial evidence," rebutting the prima facie evidence of the validity of the proof of claim. *See* <u>Am. Express Bank, FSB v. Askenaizer (In re Plourde)</u>, 418 B.R. 495, 504 (B.A.P. 1st Cir. 2009); <u>In re Long</u>, 353 B.R. 1, 13 (Bankr. D. Mass. 2006) ("If the objecting party produces substantial evidence in opposition to the proof of claim and thereby rebuts the prima facie evidence, the burden shifts to the claimant to establish the validity of its claim."). Indeed, the Notice of the Settlement of the Class Action attached to her Complaint, indicates that Wells Fargo "acquired World Savings Bank, FSB/Wachovia Mortgage, FSB's Pick-a-Payment mortgage loan protfolio in 2008." The Debtor has not alleged facts sufficient to state a claim for relief that is plausible on its face. *See* <u>Twombly</u>, 550 U.S. at 570; <u>Iqbal</u>, 556 U.S. at 677. Accordingly, the Court shall enter an order granting the Defendant's Motion to Dismiss with respect to Count I.

B. <u>Count II – The Defendant's Claim is Wholly Unsecured as the Mortgage is Void</u>

17

Through Count II, the Debtor alleges that the Defendant's mortgage is void because 1) the loan closing was not performed by a licensed attorney, and, thus, the Defendant engaged in unauthorized practice of law, or 2) the mortgage was not acknowledged on August 17, 2006 in the presence of a notary public, namely Mr. Sweeny.

### 1. The Transaction Was Not Closed by a Licensed Attorney

The Debtor asserts that if Mr. Sweeny performed the transaction as the Defendant's representative, the mortgage is void because Mr. Sweeny is not a licensed attorney.  The Debtor relies on Mass. Conveyancers Ass'n v. Colonial Title & Escrow, Inc., 13 Mass. L. Rptr. 633 (Mass. Super. Ct. June 5, 2001).  As determined by the court in that case, Mr. Sweeny was Colonial Title's president and Attorney Carroll was Colonial Title's resident agent. Colonial Title provided services to mortgage lenders, including writing title insurance policies and acting as closing agent for lenders.  The court found that Colonial Title engaged in the unauthorized practice of law and permanently enjoined Colonial Title from "[p]reparing, drafting or reviewing legal documents that affect title to real estate" and "[r]epresenting lenders as their closing agents" among other conduct. Id. at *8.  The Debtor asserts that Mr. Sweeny, and possibly Attorney Carroll, to the extent he was involved in the closing, violated the permanent injunction.

In addition, the Debtor argues that the mortgage is void because, to the extent Mr. Sweeny conducted the closing, he contravened Gov. Romney's Executive Order No. 455 (04-04).  Section 9 of that Order prohibits a notary public, who is not a licensed attorney or directly supervised by an attorney, from conducting a real estate closing.  According to the

18

Debtor, it follows that the mortgage is void because Mr. Sweeny is not an attorney.

In its Motion to Dismiss, the Defendant, citing <u>Valley Forge Christian College v.</u> <u>Americans United for Separation of Church and State, Inc.</u>, 454 U.S. 464, 472 (1982)("at an irreducible minimum, Art. III requires the party who invokes the court's authority to 'show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant . . .'"), asserts that the Debtor lacks standing to assert the unauthorized practice of law claim because, to the extent Mr. Sweeny conducted the closing, Mr. Sweeny represented the Defendant, not the Debtor.  The Debtor did not rely on Mr. Sweeny's representations that he was an attorney for the Defendant, nor did Mr. Sweeny advise the Debtor of her legal rights and the effect of the mortgage.  The Defendant further contends that even if the Debtor has standing to pursue a claim for unauthorized practice of law, voiding the lien on the Debtor's residence is not an available remedy and the Debtor cited no authority for that position.

The Court concludes that the Defendant's position is meritorius and rules that the Debtor does not have standing to bring the unauthorized practice of law claim.  The Debtor had no contractual relationship with either Attorney Carroll or Mr. Sweeny.  Neither owed her a duty to use reasonable care, and she did not allege that her losses were the result of the unauthorized practice of law on the part of Mr. Sweeny.  Rather, she has alleged that her damages were the result of the Defendant's failure to consider her inability to pay.  Any action for unauthorized practice of law is not the Debtor's to assert because she was not represented by either Mr. Sweeny or Attorney Carroll.

As to the Debtor's argument that the mortgage is void because it contravenes Executive Order 455, her argument constitutes an unwarranted extension of the Order. The only remedy contained in the Order for a notary public's **official misconduct** is revocation of the notary's commission. Section 15 of the Order provides that "[a] notary public's commission may be revoked for official misconduct as defined by this Executive Order . . . ." (emphasis in original). The Order does not provide for avoidance of what may be an otherwise valid lien. Furthermore, the Debtor's reliance on <u>Colonial Title</u> is misplaced. The injunction applies only to Colonial Title as an entity, not to Mr. Sweeny or Attorney Carroll.

2. The Mortgage Was Not Acknowledged in the Presence of a Notary Public

In Count II, the Debtor also alleges that the mortgage is void because it was not acknowledged in the presence of a notary public. Mr. Sweeny notarized the acknowledgment on August 18, 2006, despite the date on the mortgage which indicates that the Debtor executed it one day earlier on August 17, 2006. The Debtor relies on Executive Order 455, § 6(a)(1), which provides that "(a) A notary public shall not perform a notarial act if: (1) the principal is not in the notary's presence at the time of the notarization . . . ."

In seeking dismissal of Count II, the Defendant contends that the mortgage is not void even if Mr. Sweeny notarized the acknowledgment outside of the Debtor's presence because the mortgage remains enforceable as to the Debtor, pursuant to Mass. Gen. Laws

20

ch. 183, § 4.  The Defendant, citing <u>Smith v. Porter</u>, 76 Mass. 66 (1857),[9] argues that, under

ordinary circumstances such as this, title to real estate may be transferred by a deed that

has not been acknowledged and that a conveyance document is not defective merely

because it was acknowledged some time after it was executed.

The Court need not reach a determination on whether the Debtor's alleged defect

---

[9] In <u>Smith v. Porter</u>, the court stated:

All deeds and contracts ought regularly to be dated on the day of their
execution. This is important for a great variety of purposes. The rights of
the contracting parties are not unfrequently made to depend upon an
accurate statement of time. Accordingly it is found by experience that in
the prudent management of affairs this rule is commonly recognized as
useful and observed with care. And this being at once the usual and
proper manner of conducting a transaction of this kind, it may well be
considered reasonable and safe to conclude, in any particular instance,
where there is no other evidence upon the subject, that any legal
instrument by which property is conveyed was completed on the day on
which it bears date. The principle, *omnia presumunter rite acta*, is not
confined merely to official proceedings, or the doings of public bodies, but
has been extended to acts of private individuals, especially when they are
of a formal character, as writings under seal. 1 Phil. Ev. (8th ed.) 470. The
instruction of the court respecting the effect to be given to the deed of
Matthew Whipple to Nathan Poland was in conformity to this rule, and
adapted to the state of the evidence upon which it was called for. It is of
little importance that the deed was not acknowledged on the same day on
which it purports to have been executed, but on the 17th of January 1806.
It is well known that in this commonwealth the title to land, followed by a
corresponding seisin and possession, often passes by instruments of
conveyance which are not duly acknowledged; and accordingly the law
will not allow a title to fail on account of such omission, but has made
suitable provision for supplying the defect of an acknowledgment, where
it is found to exist. Rev. Sts. *c.* 59, § 14.

76 Mass. at 68-69.

in the acknowledgment is grounds for avoidance of the lien.  Although neither party

addressed the issue of whether the Debtor has standing to bring an avoidance action, the

Court rules that the Debtor failed to allege sufficient facts to confer standing to avoid Wells

Fargo's lien.

Section 544(a) of the Bankruptcy Code provides that "the trustee" may avoid any

transfer of property under that section of the Bankruptcy Code. 11 U.S.C. § 544(a). There

is no specific section of the Bankruptcy Code that authorizes a debtor to prosecute an action

under § 544. Section 1303 of the Bankruptcy Code grants Chapter 13 debtors certain rights

and powers granted to a trustee under § 363 of the Bankruptcy Code, but makes no

mention of powers granted to a trustee under other sections of the Bankruptcy Code such

as § 544.  Although there is no express authority for a Chapter 13 debtor to exercise the

avoidance or recovery powers of § 544, there are reported cases going both ways on this

issue.  *See generally* Kain v. Bank of New York Mellon (In re Kain), No. 10-80047, 2012 WL

1098465, at *9 (Bankr. D.S.C. March 30, 2012) (collecting cases).  In Massachusetts, courts

have ruled that Chapter 13 debtor do not have avoidance powers.  *See* In re Miller, 251 B.R.

770 (Bankr. D. Mass. 2000); In re Callanan, 190 B.R. 137 (Bankr. D. Mass. 1995); *cf.* In re

Dessources, 430 B.R. 330 (Bankr. D. Mass. 2010).

Because the parties failed to satisfactorily brief the issue of the Debtor's standing,

the Court shall enter an order dismissing Count II without prejudice to the filing of an

amended complaint by the Debtor, plausibly demonstrating the applicability of 11 U.S.C.

§ 522(h).[10]

C. Count IV – The Debtor's Chapter 93A Claim

The Debtor alleges that the Defendant engaged in unfair or deceptive trade practices in violation of Chapter 93A by providing a loan to the Debtor that the Defendant "knew or should have known based on her income that she would be unable to make the monthly required payments after the expiration of the Initial Payment terms . . . ."   Unfair or deceptive practices in the conduct of any trade or commerce, when conducted in the Commonwealth of Massachusetts, are unlawful under Mass. Gen. Laws ch. 93A, § 2. Unfairness is determined from all the circumstances. Duclersaint v. Fed. Nat. Mortg. Ass'n, 427 Mass. 809, 814, 696 N.E.2d 536, 540 (1998).   "A practice may be deceptive if it reasonably could be found to have caused the plaintiff to act differently than he otherwise would have acted." Id.   See also Akar v. Fed. Nat'l. Mortg. Ass'n., 845 F. Supp. 2d 381, 404 (D. Mass. 2012).

The Defendant asserts four alternative grounds for dismissal of Count IV: 1) the Debtor did not comply with the pre-suit demand requirement of § 9(3) of Chapter 93A, 2) the Debtor's Chapter 93A claim is time barred, 3) the Pick-A-Payment Class Action Settlement operates to release the Defendant from the Debtor's Chapter 93A claim, and 4)

---

[10] In addition, dismissal will not affect the Chapter 13 Trustee's ability to commence an adversary proceeding under 11 U.S.C. § 544. See In re Reid, 480 B.R. 436, 440 (Bankr. D. Mass. 2012). See generally Agin v. Mortg. Elec. Registration Sys., Inc. (In re Giroux), 2009 WL 1458173 (Bankr. D. Mass. 2009) aff'd, 2009 WL 3834002 (D. Mass. 2009), and In re Bower, 2010 WL 4023396 (Bankr. D. Mass. 2010).

23

the Home Owners' Loan Act ("HOLA"), 12 U.S.C. § 1461, et seq., preempts the Debtor's

Chapter 93A claim.  If any one of those grounds has merit, it obviates the need for this

Court to consider the remaining grounds.

The Court concludes that the Debtor's Chapter 93A Count is barred by the Class

Action Settlement.  Because the Debtor attached a copy of the Settlement Notice to her

Complaint and the Defendant also provided evidentiary materials relative to the Class

Action Settlement, and neither party objected to the exhibits attached to their respective

documents, the Court shall treat the Wells Fargo's Motion to Dismiss Count IV as a Motion

for Summary Judgment.  The Court finds that there are no genuine issues of material fact

with respect to the Class Action Settlement or the Debtor's participation in it.  *See*  Fed. R.

Civ. P. 56(a), made applicable to this proceeding by Fed. R. Bankr. P. 7056.

Although the Debtor withdrew Count V for breach of the Settlement Agreement,

*see* note 7, *supra*, she alleged that she did not opt out of the Settlement and that she sought

a loan modification pursuant to its provisions.  Accordingly, the Court finds that the terms

of the Settlement Agreement govern the Debtor's Chapter 93A Count and, as discussed

below, compel the conclusion that she released the Defendant from any claims relating to

the origination of her loan.

In seeking dismissal of Count IV, the Defendant asserts that the terms of the

Settlement reached in In re Wachovia Corporation "Pick-A-Payment Mortgage Marketing

and Sales Practices Litigation, No. 09-02015, 2011 WL 1877630 (N.D. Cal. May 17, 2011),

released and now bar the Debtor's Chapter 93A claim.  Specifically, the Defendant argues

24

that the pursuant to the Settlement the Debtor released all claims that the Defendant violated state unfair and deceptive trade practice statutes and all claims arising out of the origination of mortgage loans, as well as claims relating to the manner in which the Defendant applied payments to principal and interest, claims based on negative amortization, and claims relating to the disclosure of the Pick-A-Payment mortgage loan's potential for negative amortization.  The Defendant further argues that the Settlement released the Debtor's Chapter 93A claim because it relates to the loan's origination, negative amortization, and the disclosure of the loan's potential for negative amortization.

The order entered by the United States District Court for the Northern District of California approved a 62-page "Agreement and Stipulation of Settlement of Class Action," and followed the issuance of the Notice attached to the Debtor's Complaint.  The Notice contained basic information about the Settlement and was crafted to apprise non-lawyers of their rights with respect to the Settlement, including their right to opt-out of the Class Action.  Unlike the note executed by the Debtor, the font size used in the Notice was easy to read.  Moreover, the Notice contained a series of straightforward questions and answers, including "What am I giving up to stay in the Class?" and "How do I get out of the Settlement?"  In answer to the first question, the Notice provided:

> Unless you exclude yourself from the Settlement, you can't sue the Defendants, continue to sue, or be part of any other lawsuit against the Defendants about the legal issues in the case. It also means that all of the decisions by the Court will bind you.  The "Release of Claims" is described more fully in the Settlement Agreement and describes exactly the legal claims that you give up if you get benefits from the Settlement. . . .

The Settlement Agreement set forth information about the numerous complaints against the Defendant and/or the entities it acquired through merger, including two cases from the United States District Court for the District of Massachusetts, *see* <u>Bettinelli v. Wells Fargo Home Mortgage, Inc.</u>, Case No. 1:09-cv-11079-MSW and <u>Henning v. Wachovia Morg. Corp. and Wachovia Mortgage, FSB</u>, Case No. 1:09-cv-11053-MLW.  The Agreement also provided in pertinent part the following:

> . . . IT IS HEREBY STIPULATED AND AGREED by and between the Class Representatives, for themselves and the Settlement Class . . . and the Defendants that, subject to the terms and conditions precedent set forth below, the Lawsuit and the Alleged Claims . . . shall be finally and fully compromised, release, resolved, relinquished, discharged, and settled; and the Lawsuit shall be dismissed . . . without any adverse findings or conclusions against the Defendants or anyone else, upon and subject to the terms and conditions of this Agreement . . . .

> 1.6. "**Alleged Claims**" means the claims that are alleged in the Lawsuit and the Related Actions, including, but not limited to, claims that the Defendants and Additional Defendants violated TILA, sate unfair competition laws, state unfair and deceptive trade practices statutes, and state consumer protection laws; breached the terms of the Parties' contracts; engaged in fraudulent misrepresentations or omissions; and breached the implied duty of good faith and fair dealing in connection with the Plaintiffs' Pick-a-Payment mortgage loans by failing to adequately disclose the loans' potential for negative amortization, providing the Borrowers with inaccurate payment schedules, failing to disclose the interest rates on which those payment schedules were based, and failing to disclose the terms of the Parties' legal obligations, entitling them to damages, statutory penalties, restitution, punitive damages, interest, attorneys' fees, costs, injunctive relief, and other legal or equitable relief under state and federal law.

> 1.68 "**Unknown Claims**" means claims that could have been raised in the Lawsuit and/or in the Related Actions and that

the Releasing Parties, or any one of them, do not know or suspect to exist, which, if known by him, her, or it, might affect his, her, or its agreement to release the Released Entities or the Alleged Claims, or might affect his, her, or its decision to agree, object to, or not object to the Settlement.  Upon the Effective Date, any Releasing Party shall be deemed to have, and shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, right, and benefits of § 1542 of the California Civil Code  . . . .

Upon the Effective Date, each Releasing Party shall be deemed to have, and shall have, waived any and all provisions, rights, and benefits conferred by any law of any state, the District of Columbia or territory of the United States, or principle of common law, or the law of any jurisdiction outside the United States, which is similar, comparable, or equivalent to § 1542 of the California Civil Code.  Plaintiffs acknowledge that they may discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of the Release, but that it is their intention to finally and forever settle and release the Alleged Claims notwithstanding any Unknown Claims they may have . . . .[11]

## V. RELEASES

A. **The Release:**  In consideration for the Settlement Benefits described herein, each and all of the Plaintiffs hereby agree to and by operation of law shall be deemed to agree to fully, finally, and completely release and forever discharge the Alleged Claims and any and every actual or potential known or unknown claim, liability, right, demand, suit, matter,

---

[11] Section 1542 provides:  "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

obligation, damage, loss or cost, action or cause of action, of every kind and description that the Releasing party has or may have, including assigned claims and Unknown Claims, asserted or unasserted, latent or patent, that is, has been or in the future might be asserted by any Releasing Party in the Lawsuit, the Related Actions, any other case consolidated in the Lawsuit, or in any other action or proceeding in this Court, or any other court, administrative venue, tribunal or arbitration or other forum, regardless of the type or amount of relief or damages claimed, against any of the Released Entities arising out of the Alleged Claims, the origination of the Settlement Class Member's Pick-a-Payment mortgage loan, the manner in which the Defendants applied the Settlement Class Member's payments to principal and interest, negative amortization, the Pick-a-Payment mortgage loan's potential for negative amortization, the disclosure of the Pick-a-Payment mortgage loan's potential for negative amortization, and the disclosure of the manner in which payments would be applied to principal and interest.

B. Subject to the provisions of Section V(A), nothing in this Release shall preclude any Settlement Class Member from later negotiating a modification of the terms of their Pick-a-Payment mortgage loan with the Defendants.

C. The Plaintiffs hereby agree and acknowledge, and by operation of law will be deemed to agree and acknowledge as of the Effective Date, that each and all of the provisions of this Section V, separately and severally, constitute essential terms of this Agreement and shall be construed in favor of effectuating a complete settlement of the Lawsuit and Related Actions.

As part of the Settlement Agreement, Class Actions Defendants were to make loan modifications available to Class B and C members. The loan modification options considered DTI or "Debtor-to-Income Ratio." DTI is a defined term in the Settlement Agreement at Section 1.22 as follows:

> [T]he ratio of the Borrower's first-lien monthly mortgage obligations (including monthly amounts for principal, interest, property taxes, hazard insurance, flood insurance, condominium association fees, and homeowners' association fees, as applicable, regardless of whether any of the foregoing are included in the Borrowers's Monthly Payment (defined in Section 1.41 hereafter), and includng any escrow payment shortage amounts subject to a repayment plan) to the Borrower's gross monthly income, all determined in accordance with HAMP . . . .

The Settlement Agreement set forth detailed provisions as to the loan modification process, which continues through June 30, 2013. Indeed, after June 30, 2013 the Defendants, in their sole discretion, have agreed to evaluate Settlement Class B and C members "for potential loan workout solutions that are commercially reasonable and . . . designed to help avoid foreclosure."

The Debtor concedes that the Class Action Settlement released any Chapter 93A claims arising from the Defendant's failure to disclose the negative amortization feature of the loan. Nonetheless, she argues that the Settlement did not release the claim that the Defendant knew or should have known the Debtor would be unable to make payments according to the loan's terms. *See* <u>Fernandes v. Havkin</u>, 731 F. Supp. 2d 103, 119 (D. Mass. 2010) (citing <u>Comm. v. Fremont Inv. & Loan</u>, 452 Mass. 733, 735 (2008), and stating "[t]he underlying rationale in <u>Fremont</u> was to prohibit loan terms that would make it 'almost certain the borrower would not be able to make the necessary loan payments, leading to default and then foreclosure.'"). The Debtor contends that the Defendant's "actions in issuing the Note to the Debtor when it knew or should have known based on her income that she would be unable to make the required monthly payments after the expiration of

29

the Initial Payment terms constitutes unfair and deceptive business practices in violation

of [Chapter 93A]." She also states that her Chapter 93A claim tracks the unfair and

deceptive practices considered by the court in <u>Fremont</u>. In sum, she argues that the

Defendant extended a loan that it should have known she could not repay and that that

claim is separate and distinct from a claim that the Defendant should have disclosed the

negative amortization feature of the note.

The Debtor's Chapter 93A claim does resemble the claims in <u>Fremont</u>. The loans

which violated Chapter 93A in <u>Fremont</u> had the following four features:

> (1) the loans were ARM loans with an introductory rate period of three years
> or less; (2) they featured an introductory rate for the initial period that was
> at least three per cent below the fully indexed rate; (3) they were made to
> borrowers for whom the debt-to-income ratio would have exceeded fifty per
> cent had Fremont measured the borrower's debt by the monthly payments
> that would be due at the fully indexed rate rather than under the
> introductory rate; and (4) the loan-to-value ratio was one hundred per cent,
> or the loan featured a substantial prepayment penalty (defined by the judge
> as greater than the "conventional prepayment penalty" defined in G.L. c.
> 183C, § 2) or a prepayment penalty that extended beyond the introductory
> rate period.

452 Mass. at 739. In <u>Fernandes v. Havkin</u>, the court observed: "[t]he four <u>Fremont</u>

characteristics, however, are not per se unfair; these conditions, rather, 'may under certain

circumstances make a loan unfair' including their *issuance* 'with utter disregard for risk of

foreclosure." 731 F. Supp. 2d at 119 (emphasis supplied).

The Court concludes that the Debtor reads the Settlement terms too narrowly. The

scope of the Release pertained to the Alleged Claims and Unknown Claims, as well as

claims arising from the origination of the loans. The Alleged Claims were defined to

30

include "state unfair and deceptive practices statutes, and state consumer protections laws." Section 2 of Chapter 93A, upon which the Debtor relies makes unlawful "unfair or deceptive acts or practices." The result could not be more clear. The Debtor's attempt to carve out from the Settlement's Release a claim based upon her inability to pay is unavailing. The Plaintiffs in the Class Action did not confine their claims against the Defendants to the negative amortization feature and included among their claims those relating to unfair and deceptive acts including predatory lending.

## VI. CONCLUSION

In view of the foregoing, the Court shall enter an order granting the Defendant's Motion to Dismiss Counts I and II. Treating the Motion to Dismiss Count IV as a motion for summary judgment, the Court shall grant the Defendant's Motion. As noted above, the Court's order is without prejudice to the filing of an amended complaint by the Debtor to state a plausible claim under 11 U.S.C. § 502(h) and it is without prejudice to the filing of an amended complaint setting forth a plausible claim to void the August 17, 2006 mortgage contract based upon lack of capacity or undue influence. *See generally* Marston v. U.S., No. 10-10437, 2012 WL 4529940 (D. Mass. Sept. 30, 2012).

By the Court,

*Joan N. Feeney*

Joan N. Feeney
United States Bankruptcy Judge

Dated: March 27, 2013

31