UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**MARY ANN CURRIE**,                                        Chapter 13
    Debtor                                                Case No. 11-17349-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**MARY ANN CURRIE**,
    Plaintiff
v.                                                         Adv. P. No. 12-1009
**WELLS FARGO BANK, N.A.**,
    Defendant

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**MEMORANDUM**

Mary Ann Currie, (the "Debtor") commenced an adversary proceeding against Wells Fargo Bank, N.A. on January 18, 2012.  It is undisputed that Wells Fargo, N.A. is the successor by merger to Wells Fargo Bank Southwest, N.A., f/k/a Wachovia Mortgage, FSB, f/k/a World Savings Bank, FSB ("Wells Fargo").  The Debtor obtained a mortgage loan from World Savings Bank, FSB in August of 2006.

Wells Fargo, moved to dismiss the Debtor's original Complaint, and, on March 27, 2013, this Court issued a Memorandum and Order, granting Wells Fargo's Motion to Dismiss Counts I and II of the Debtor's Complaint, treating Wells Fargo's Motion to Dismiss

1

Count IV as a Motion for Summary Judgment, and granting that motion.[1] The Court stated that its order was without prejudice to the filing of an amended complaint by the Debtor to state a plausible claim under 11 U.S.C. § 502(h), or a plausible claim to void the August 17, 2006 mortgage based upon lack of capacity or undue influence.

On April 22, 2013, the Court issued an order in which it stated:

*The Defendant moved to dismiss the Debtor's Complaint on September 21, 2012. Because the Debtor agreed to the dismissal of Counts III and V of her Complaint, only Counts I, II, and IV were pertinent to the Motion to Dismiss at the time the Court issued its Memorandum and Order on March 27, 2013. Accordingly, final judgment entered in favor of the Defendant with respect to the Debtor's adversary proceeding.*

By order dated May 25, 2012, this Court consolidated the Objection to confirmation filed by the Defendant with the Debtor's adversary proceeding. In accordance with the Memorandum dated March 27, 2013, the Court sustains the Defendant's Objection to Confirmation of the Debtor's Second Amended Chapter 13 Plan. The Debtor is hereby ordered to file a further amended Chapter 13 Plan within 21 days of the date of this order.

Because the Plaintiff did not elect to amend her Complaint, the Court orders the closure of the adversary proceeding, unless within 7 days of the date of this order, the Plaintiff files an amended complaint or otherwise objects to the closing of the case.

(emphasis supplied).

On May 7, 2013, the Debtor filed a Motion for Leave to Amend Adversary Complaint

---

[1] The Debtor's original Complaint contained two Counts with Roman Numeral "II," namely Count II - "The Wells Fargo Claim is Wholly Unsecured as the Mortgage is Void," and Count II - "Rescission." For purposes of this decision, the Court shall refer to the second Count II as Count III and refer to the remaining counts as they should have been number absent the scrivener's error. The Debtor agreed to the dismissal of Counts III - "Rescission" and Count V -"Breach of Contract - Pick-A-Payment Settlement." Accordingly, only three counts remained before the Court considered Wells Fargo's Motion to Dismiss.

2

to assert two counts: Count I - Mass. Gen. Laws ch. 93A; and Count II - Lack of Capacity.

With respect to Count I, the Debtor stated:

> [T]he Debtor recognizes that the Court's March 27th Memorandum of Decision dismissed her prior M.G.L. c. 93A claim upon a finding that it had been released as part of the Pick-a-Payment Settlement. That finding, however, was predicated on a determination that the Debtor had not opted out of the Pick-a-Payment Settlement, and therefore would be bound fully by its terms. Since the issuance of the March 27th Memorandum of Decision, undersigned counsel has learned that in fact the Debtor had exercised her right to opt out of the Pick-a-Payment Settlement by letter dated March 2, 2011, to the Settlement Administrator . . . .
>
> At no time prior to the filing of the Initial Adversary Compliant, the Debtor's Opposition to Motion to Dismiss or oral argument on the Motion to Dismiss was Debtor's counsel aware that the Debtor had exercised her right to opt-out of the Pick-a-Payment Settlement. In fact, it was not until after undersigned counsel reviewed the Court's Memorandum of Decision with his client that the Debtor's daughter discovered the Opt-Out Letter in the Debtor's files.

Wells Fargo objected to the Motion to Amend the Complaint with respect to Count I - Ch. 93A only, stating:

> The Decision granting summary judgment in favor of Wells Fargo is *res judicata* to Debtor's proposed amended Count I, and must be reconsidered if the Complaint is to be amended. Alternatively, and to the extent that *res judicata* does not apply due to a lack of final judgment, the Decision is the law of the case. In either instance, the Court should not reconsider its dismissal of Debtor's M.G.L. c. 93A claim because (a) Debtor did not exercise due diligence with respect to the Opt-Out Letter, and (b) the Opt-Out Letter will not change the result of the Decision, as the M.G.L. c. 93A claim is untimely and preempted. Even applying the less stringent standard for amendment under Fed. R. Bankr. P. 7015, amendment should be denied as futile.

The Debtor's Amended Complaint contains the following allegations material to the resolution of the instant dispute:

> 20. The terms of the Note called for an initial monthly payment in the amount

of $862.61 per month (hereinafter the "Initial Payment"). The Initial Payment made the Note a negative [sic] amortizing loan for the initial thirteen months.

21. The Initial Payment was set to expire on October 15, 2007 and was to be adjusted effective that date, and every twelve months thereafter so that it would no longer be paid pursuant to a negative amortization schedule.

22. The Debtor was not advised of the fact that the Note called for a negative amortization over the course of the first thirteen months, meaning that the amount owed on the Note following her payment of the first thirteen payments thereunder would be greater than the fact [sic] amount of the Note as it was executed on August 17, 2007.

23. It was not explained to the Debtor that her initial monthly payment was insufficient to repay the loan of the life of its term.

24. It was not explained to the Debtor that her initial monthly payment would increase substantially on October 15, 2007, and every 12 months thereafter.

25. At the time that the Note was executed, the Debtor's income consisted of $569 per month from Social Security and $194 on average per month from interest income.

25 [sic]. At the time it issued the loan, World Bank knew that the Debtor was on a fixed income, and that her income would be insufficient to repay the adjusted monthly payment amount after the expiration of the Initial Payment period.

26. World Bank failed to disclose to the Debtor the negative amortization feature of the loan, or that her income was insufficient to satisfy the monthly payments after adjustment.

***

30. World Savings' actions in issuing the Note without advising the Debtor that it was subject to a negative amortization schedule constitutes unfair and deceptive business practices in violation of M.G.L. c. 93A, § 2.

31. World Savings' actions in issuing the Note to the Debtor when it knew or should have known based on her income that she would be unable to make the required monthly payments after the expiration of the Initial Payment

4

> terms constitutes unfair and deceptive business practices in violation of M.G.L. c. 93A, § 2.
>
> 32. To the extent that Wells Fargo asserts its claims under the Note as a successor in interest to World Savings and/or Wachovia, such claims are subject to the Debtor's right to set off its M.G.L. c. 93A, § 2 claim.
>
> 33. As the Debtor's claim herein is asserted by way of an objection to the Wells Fargo Claim, she is not required to have sent a 30 day demand letter to Wells Fargo.
>
> 34. As a result of World Savings', and in turn Wells Fargo's unfair and deceptive trade practices, the Debtor has been damaged in an amount to be determined by the Court.

The Court conducted a hearing on June 18, 2013 and afforded the Debtor an opportunity to submit a Supplemental Brief in Support of her Motion for Leave to Amend Complaint.

Having considered the arguments made by counsel both in their briefs and at the hearing, as well as the decisions cited by the parties, the Court rules that Count I of the Debtor's Amended Complaint under Ch. 93A claim is preempted by the Home Owners' Loan Act ("HOLA"), 12 U.S. C. § 1461, *et seq.*, and its implementing regulations, including 12 C.F.R. §§ 545.2 and 560.2, issued by the Treasury Department's Office of Thrift Supervision.

> Section 506.2 provides in pertinent part the following:
>
> (a) . . . OTS hereby occupies the entire field of lending regulation for federal savings associations. OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation. Accordingly, federal savings associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities, except to the extent provided in paragraph (c) of this section or § 560.110 of this part. For purposes of this section, "state law"

includes any state statute, regulation, ruling, order or judicial decision.

(b) Illustrative examples. Except as provided in § 560.110 of this part, the types of state laws preempted by paragraph (a) of this section include, without limitation, state laws purporting to impose requirements regarding: . . .

>  (4) The terms of credit, *including amortization of loans* and the deferral and capitalization of interest and adjustments to the interest rate, balance, payments due, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan; . . .

>  (10) Processing, *origination*, servicing, sale or purchase of, or investment or participation in, mortgages;

(c) State laws that are not preempted. State laws of the following types are not preempted to the extent that they only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of paragraph (a) of this section:

(1) Contract and commercial law;

(2) Real property law;

(3) Homestead laws specified in 12 U.S.C. 1462a(f);

(4) Tort law;

(5) Criminal law; and

(6) Any other law that OTS, upon review, finds:

>  (i) Furthers a vital state interest; and

>  (ii) Either has only an incidental effect on lending operations or is not otherwise contrary to the purposes expressed in paragraph (a) of this section.

12 C. F. R. § 560.2 (emphasis supplied).

In <u>Frykberg v. JPMorgan Chase Bank, N.A. (In re Frykberg)</u>, 490 B.R. 652 (B.A.P. 1st Cir. 2013), the Bankruptcy Appellate Panel of the First Circuit set forth the analytical framework for determining whether a specific state law is preempted by HOLA. It stated:

> "[T]he first step [is] to determine whether the type of law in question is listed in paragraph (b). If so, the analysis will end there; the law is preempted." 61 Fed. Reg. 50951–01, 50966. In paragraph (b), the OTS provides a number of examples of types of state laws that are definitively preempted. These include laws "purporting to impose requirements regarding," inter alia, "[d]isclosure and advertising" and "[p]rocessing, origination, servicing, sale or purchase of, or investment or participation in, mortgages." 12 C.F.R. § 560.2(b).
>
> If the state law is none of the types listed in paragraph (b), "the next question is whether the law affects lending." 61 Fed.Reg. 50951–01, 50966. If it does, a presumption of preemption arises that is reversible "only if the law can clearly be shown to fit within the confines of paragraph (c). For these purposes, paragraph (c) is intended to be interpreted narrowly. Any doubt should be resolved in favor of preemption." <u>Id.</u> at 50966–67. Paragraph (c) states that state laws of particular types, including contract and commercial law, real property law, and tort law "are not preempted to the extent that they only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of paragraph (a) of this section." 12 C.F.R. [§ ] 560.2(c).

<u>Frykberg</u>, 490 B.R. at 658-59 (quoting <u>Sovereign Bank v. Sturgis</u>, 863 F.Supp.2d 75, 92 (D. Mass. 2012)).

In <u>Sovereign Bank v. Sturgis</u>, 863 F.Supp.2d 75 (D. Mass. 2012), the court determined that claims under the Massachusetts Consumer Credit Cost Disclosure Act, Mass. Gen. Laws ch. 140D, §1 et seq., are preempted by HOLA. It also considered whether Ch. 93A claims were preempted by HOLA. It observed:

> Like the Indiana DAP [Deceptive Practices Act], G.L. c. 93A on its face does not purport to regulate lending and so is not preempted under § 560.2(b). Instead, it falls within the category of "contract and commercial law" under

7

§ 560.2(c)(1). In the case of the Indiana DAP, though, OTS [Office of Thrift Supervision] was presented with no particular requirement that the law imposed on lending. *See* id. Because G.L. c. 93A does impose particular requirements on lenders, the analysis regarding whether its effect is "incidental" is significantly more complicated.

In 1999, OTS was faced with "the very real risk that different states could consider different practices 'unfair' or 'fraudulent' or 'deceptive,' thereby subjecting federal savings associations to multiple, sometimes conflicting, regulatory schemes." Fultz v. World Sav. and Loan Ass'n, 571 F.Supp.2d at 1197–98. OTS addressed this concern in a second Opinion Letter. *See* Opinion of OTS Chief Counsel, P–99–3, March 10, 999, available at 1999 WL 413698 (hereinafter "1999 Opinion Letter"). This letter addressed the California Unfair Competition Act ("UCA"), which was being used to regulate three specific areas of lending operations: (1) advertising; (2) forced placement of hazard insurance; and (3) the imposition of certain loan-related fees. *See* id.

OTS followed the analysis of the 1996 Opinion Letter to a point, noting that the state law "is not directly aimed at federal savings associations, or lenders generally," and that it may "be viewed as a form of contract and commercial law under § 560.2(c)." Id. However, OTS delved further into the third step of the analytical framework. In contrast to the brief analysis in the 1996 Opinion Letter, the 1999 Opinion Letter went on to consider "the relationship between federal and state laws as they are interpreted and applied, not merely as they are written." Id. It analyzed each of the areas of possible conflict—the restrictions that the UCA placed on advertising, forced-place insurance, and loan related fees—and determined regarding each that because the law "[sought] to set very particular requirements" on the lending operations of federally chartered banks, it had "more than an incidental impact" on their lending activities. Id.

Sovereign reaches too broadly in its motion for preemption of the Sturgises' claims under G.L. c. 93A. *The entire claim is not subject to blanket preemption, as "nothing in federal law preempts general deceptive practices statutes." 1996 OTS Opinion Letter. The Sturgises bring a plethora of claims under G.L. c. 93A, through their Counterclaims and through the 93A letters that they have incorporated into Count Eleven. Some of these may be preempted. For instance, any attempt to shoehorn a MCCCDA claim into G.L. c. 93A, when MCCCDA itself is preempted*, *see supra* Part III(B)(8)(a), is certainly an attempt to impose a requirement that more than incidentally affects lending. Others may not be preempted. For instance, given that the breach of contract claim is not preempted, *see supra*

>Part III(B)(8)(b), a violation of 93A that is clearly part and parcel of the contract allegation is unlikely to affect lending more than incidentally.

Sturgis, 863 F.3d at 97-98 (emphasis supplied).

This Court finds that the Debtor is attempting to shoehorn claims relating to nondisclosures, which took place when the loan was originated, into Ch. 93A, although the claims fall within the 560.2(b) and are clearly preempted by HOLA. The Debtor's claims relate to violations of the MCCCDA, and the Debtor waived her claim for rescission under Mass. Gen. Laws ch. 140D, § 10(a). Section 34 of Mass. Gen. Laws ch. 140D, provides that "[a] violation of this chapter, or any rule or regulation issued hereunder, shall constitute a violation of chapter ninety-three A." *See* May v. Suntrust Mortg., Inc. (In re May), No. 10-1176, 2011 WL 4102805 at *5 (Bankr. D. Mass. Sept. 14, 2011). Having waived her claim under the MCCDA for rescission, the Debtor cannot revive the claim in any other form through Ch. 93A, where the MCCCDA is preempted by HOLA. *See* Sturgis, 863 F.Supp.2d at 96-97. As noted by the court in Dixon v. Wells Fargo Bank, N.A., 798 F.Supp.2d 336 (D. Mass. 2011),

>[C]ourts must be wary of artfully pleaded attempts to use common-law claims as a clandestine way of imposing requirements on lenders that states otherwise could not enact through legislation or regulation. McAnaney, 665 F.Supp.2d at 169 n. 39. Courts must look beyond "the label given to the putative cause of action," Schilke v. Wachovia Mortg., FSB, 758 F.Supp.2d 549, 557 (N.D. Ill. 2010), and instead undertake "an independent fact-intensive inquiry into the substance of each claim raised," Bishop v. Ocwen Loan Servicing, LLC, Civ. No. 3:10–0468, 2010 WL 4115463, at *4 (S.D.W.Va. Oct. 19, 2010). *See* Watkins v. Wells Fargo Home Mortg., 631 F.Supp.2d 776, 782–83 (S.D. W.Va. 2008) ("If the plaintiff truly complains of a term or practice outside the purview of the federal regulations, there is no preemption. However, conflicting state regulation masquerading as a common law

>   contract claim cannot be allowed to supplant existing federal regulations."). The question is one of function, not theory: will enforcement of the cause of action interfere with or contravene lending, the regulation of which Congress has committed exclusively to a federal agency? *See* Naulty v. GreenPoint Mortg. Funding, Inc., Nos. C 09–1542 MHP, C 09–1545 MHP, 2009 WL 2870620, at *4 (N.D. Cal. Sept. 3, 2009). "[I]f the conduct complained of . . . falls within the scope of federal authority concerning lending activities, it is preempted." Schilke, 758 F.Supp.2d at 557; *see* Gibson v. World Sav. & Loan Assoc., 103 Cal.App.4th 1291, 128 Cal.Rptr.2d 19, 27 (2002) ("As to each state law claim, the central inquiry is whether the legal duty that is the predicate of the claims constitutes a requirement or prohibition of the sort that federal law expressly preempts."). This functional analysis is consistent with the "as applied" rule of the Eighth and Ninth Circuits as well as the balancing approach of the Seventh Circuit. *See* Coffman v. Bank of Am., NA, No. 2:09–00587, 2010 WL 3069905, at *6 (S.D. W.Va. Aug. 4, 2010) ("[B]oth approaches are, in essence, a method of determining whether a plaintiff's state law claim attempts to impose requirements upon the lending activities of federal savings banks."); Jones, 718 F.Supp.2d at 735 ("In Casey, Silvas, and Ocwen, the courts considered the specific nature of each state law claim to determine whether an allegation is a state-based cause of action or an attempt at regulation preempted by section 560.2(b).").

Dixon, 798 F.Supp.2d at 356. Although the Debtor's labeled her claim as one under Ch. 93A, the claim is clearly within the scope of 12 C.F.R. § 560.2. Accordingly, the Court shall enter an order sustaining Wells Fargo's Objection to the Debtor's Motion to Amend her Complaint to add a count under Ch.93A. The remaining count of the Debtor's Amended Complaint, Count II - Lack of Capacity, survives.

>By the Court,
>
>*/s/ Joan N. Feeney*
>
>Joan N. Feeney
>United States Bankruptcy Judge

Dated: July 8, 2013